BUENA VISTA VENEER COMPANY *v.* HODGES, RECEIVER.

Opinion delivered January 11, 1915.

CORPORATIONS—USE OF FUNDS BY PRESIDENT—PRINCIPAL OWNER.—The president of a corporation, although the owner of practically all the stock in the same, can not use the funds of the corporation to purchase stock in another corporation, in his own name and for his own use.

Appeal from Prairie Circuit Court; *Eugene Lank-ford,* Judge; reversed.

This suit was brought by the receiver of the Des Arc Bank & Trust Company, hereinafter called the bank, against the appellant to recover the amount of an alleged overdraft.

Prior to April 6, 1913, Emmett Vaughan had been the president, and the owner of the majority of the stock of the bank, and had undertaken in various ways to interest one Herman Romunder in the purchase of some of this bank stock, and finally concluded a trade with him, by the terms of which Mr. Romunder was to purchase 743 shares of the bank stock, of the par value of $25 each, for the sum of $3,670. This agreement was in writing and provided for the reorganization of the bank, and for the election of Romunder as president, and Vaughan as cashier and secretary. As an inducement to this agreement, Vaughan had furnished Romunder a statement which showed the bank to be in a very prosperous condition, but the agreement contained the following stipulation:

"Ninth. Above matters are to be adjusted as stated and above reorganization made as designated on verification of statement on which the understanding is based and performance is to take place, on or before July 1, 1912."

It was further provided that, after this verification, Romunder was to give his demand note for this stock, payable at the bank, with interest at the rate of 6 per cent. per annum from its date until paid. This verification of the bank's condition was never made, and the note provided for was never executed, and no actual transfer of the stock ever took place. Vaughan, however, testified that after some controversy and further negotiations with Romunder, the requirement of verification and the giving of the note were waived, and he testified that the stock was, in fact, reissued to Romunder, although it was never delivered to him. These state-

ments are all sharply denied by Romunder, who testified that he never at any time waived the verification of the bank's statement and that he declined to consummate the deal for the stock by the execution of the note, or otherwise, until this requirement had been met, and that, although Vaughan had stationery and calendars and other advertising matter printed, on which his name appeared as president of the bank, this was all done without his consent. He further testified that he stood ready at all times to complete his purchase, but had never done so because of Vaughan's failure to have the books of the bank audited. The evidence shows that Vaughan introduced Romunder to the president of their correspondent bank in the city of Little Rock as the future president of the bank, and that he was frequently referred to as such. But it does not appear that Romunder ever attended any meeting of the board of directors of this bank, nor that he ever at any time undertook in any way to act as president of the bank, nor to exercise any control over its management. There was introduced in evidence the record of a meeting of the directors of the bank, held at the home of Vaughan, and these minutes recited the election of Romunder as president. But Romunder testified that he was not present at this meeting and had not authorized the action there taken, and knew nothing about it until some time later.

It further appears that the statement furnished Romunder did not reflect the true condition of the bank and that so far from being in a prosperous condition, its stock was worthless at the time Romunder agreed to purchase it. It was finally agreed that an auditor should check up the affairs of the bank, and one was secured for that purpose, but before he could complete his labors Vaughan applied for, and secured, the appointment of a receiver.

Romunder was the principal owner of the stock of the appellant company, and the statement filed by it in the office of the county clerk disclosed the following ownership of its stock: Herman Romunder, 250 shares

common stock; Robert H. Romunder, 1 share common stock; Louis H. Hammersmith, 1 share common stock; Henry P. Dailey, 3 shares common stock; Cannie W. Jones, 1 share common stock; balance of shares in the hands of the president, 492. It does not appear, however, what the ownership was of the shares reported in the hands of the president. Romunder lived in Indiana, but spent considerable time at Des Arc, and had the active control and absolute management of the affairs of the appellant company. Both this company and Romunder carried accounts with the bank, but these accounts were always kept separate, and it does not appear that Romunder ever checked against the account of the company for his own personal use. In the latter part of June the veneer company discounted with the bank a note for $10,000, and the proceeds of this note, less the discount, were deposited with the bank to the credit of the veneer company. As soon as this deposit had been credited to the account of the veneer company, Vaughan deducted $3,670, the purchase price of this stock, and this litigation grows out of that action. On the 1st of July following, when the bank book of the veneer company was balanced, its bookkeeper was informed of the manner in which the proceeds of this note had been applied, and Vaughan explained to her that he had taken this action in accordance with the oral direction given him by Romunder. This direction was oral, and it is not contended that any check or other writing ever evidenced that direction. This bookkeeper testified that when she explained to Mr. Romunder what had been done he "got after her about it" and told her to charge it back against the bank and to check it out, which she did. Romunder testified that, as soon as he heard about this transaction, he told Vaughan that it was wrong and that Vaughan would have to replace the money, and that the veneer company was going to check it out, and thereafter the books of the veneer company were kept as if this sum had never been charged to it. The books of the bank, however, show that from the date of the discount of this

note, the veneer company's account stood overdrawn until the 2d of April, at which time the bank closed its doors.

In its answer the veneer company denied that its account at the bank was overdrawn, but alleged that the bank owed it a balance of $155, for which sum it prayed judgment.

There was a trial before the jury, where these questions of fact were submitted, and by its verdict the jury has decided these questions of fact against the contention of Romunder.

*Thweatt & Thweatt* and *Trimble & Trimble,* for appellant.

If Romunder ever gave any oral instructions to Vaughan to apply any part of the money deposited by the veneer company to his personal debt, he was without authority to do so, and any such application of the deposit could not affect the veneer company, and its check against the amount so erroneously applied would not create an overdraft.  85 Ark. 185; 86 Fed. 742; 71 Fed. 797; 39 L. R. A. 84; 164 N. Y. 281; 52 L. R. A. 790; 136 S. W. 716; 65 Ark. 546; 95 Ark. 368; 62 Fed. 356.

*W. A. Leach,* for appellee.

1. The questions at issue in this case were determined by the jury upon conflicting evidence against the contentions of the appellant and in arriving at the correctness of their verdict, this court will construe the evidence in the light most favorable to the verdict, and if there is any evidence legally sufficient to sustain the verdict, it will not be disturbed.  87 Ark. 109; 74 Ark. 478; 97 Ark. 453; 76 Ark. 115; 102 Ark. 200.

2. If Romunder purchased and paid for the stock in question, he could have rescinded the contract and recovered back the money upon discovering that a fraud had been committed upon him.  31 Pa. St. 489; 10 Cyc. 421-432, and note 83; *Id.* 439, and notes; 4 Thompson on Corporations, (2 ed.) § 4148; 79 Pac. 503; 64 N. E. 1074; 74 N. E. 445; 109 N. Y. 574.

3. Romunder could, and did, bind the veneer company when he orally authorized the purchase price of the stock to be charged to the veneer company. Clark on Corporations, 509; 2 Thompson on Corporations, § 2049; 129 Fed. 327; 63 N. H. 230; 95 Ark. 374; 103 Ark. 283; 79 Ark. 45.

Out of a total of 750 shares of the veneer company's stock, the record shows that Romunder had in his name and in his hands, 742 shares. Notwithstanding his denial that he told Vaughan that he owned all the stock, but stated that it was all in his name, the conclusion is irresistible that he was the sole party in interest. His acts bound the corporation because he was the corporation.

SMITH, J., (after stating the facts). Various questions are raised in the briefs, but we find it necessary to discuss only one of them, that being the authority of Romunder to purchase the bank stock with the assets of the veneer company. We think he had no such authority. It is true he was the controlling spirit in the veneer company and dictated its policies and either owned or held in his name as president the great majority of the stock. Notwithstanding the jury, by its verdict, must have found that Romunder directed Vaughan to deduct from the veneer company's deposit the purchase price of the stock, the fact is undisputed that the books of the appellant company showed that this sum had been credited back to it, and no other stockholder of this company ever knew of that action. Romunder's knowledge of this transaction could not be imputed to other stockholders of the corporation who had no actual knowledge, because the contract was for Romunder's personal advantage and against the interest of the veneer company. *Bank of Hartford* v. *McDonald,* 107 Ark. 232.

It is not contended that the veneer company could derive any benefit or advantage from this transaction, and it is sought to bind that company only upon the theory that Romunder was the veneer company, but it has been shown that he was not the owner of all the

stock. This deposit constituted in part, the assets of the veneer company and, such assets constitute a trust fund for the benefit of any creditors there may be. Even if Vaughan's version of this transaction is accepted as reflecting the truth, which must be done in view of the verdict of the jury, the fact stands undisputed that the bank knew it was taking assets belonging to the veneer company, and not to Romunder personally, with which to pay Romunder's personal obligation, and Romunder could not authorize this action.

In a discussion of the principle involved here, in the case of *American Bonding Co.* v. *Laigle S. & L. Co.,* 111 Ark. 155, it was said: "Now, it must be conceded that the note executed by Forsythe in the name of his principal, to secure his own debt, was not a valid obligation of the Bradley Lumber Company, for it is not within the real or apparent scope of authority of an agent of a corporation, or even of its officers, to bind the corporation by the execution of negotiable paper for accommodation. *Simmons National Bank* v. *Dilley Foundry Co.,* 95 Ark. 368. Nor did Forsythe have authority to use the funds of the corporation in payment of his private debt. Anders knew, when the note was executed by Forsythe, that the name of the Bradley Lumber Company was signed merely as an accommodation, and, therefore, the paper was not binding on the Bradley Lumber Company."

A number of authorities on this subject were reviewed in the opinion in the case of *Simmons National Bank* v. *Dilley Foundry Co.,* 95 Ark. 368, where the law on this subject was stated as follows:

"It follows, from this, that no corporation has the power to divert its funds or assets from the purposes for which it was created, and it therefore has not the power by any form of contract to become a surety for or otherwise to lend its credit to another person or corporation. It has the power to make all contracts necessary or incidental to its own business; and therefore a corporation organized for the purpose of carrying on

a manufacturing business, such as the Dilley Foundry Company, has the implied power to borrow money and make negotiable paper for use within the scope of its own business; but it has no power to become a party to a bill or note for the accommodation of another person or corporation. The officers of a corporation have no power to bind it by the execution of such accommodation paper, and it can not be held liable thereon when it is known by the payee or holder that it was executed only for accommodation. 3 Thompson on Corporations, § 2225; *West St. Louis Savings Bank* v. *Shawnee County Bank*, 95 U. S. 557; 7 Cyc. 679; 10 Cyc. 1115; *El Dorado Improvement Co.* v. *Citizens Bank*, 85 Ark. 185; *Park Hotel Co.* v. *Fourth National Bank*, 30 C. C. A. 409; *Owen* v. *Storm*, 72 Atl. 441.''

It follows, therefore, that the court erred in rendering judgment upon the verdict of the jury for the amount of the alleged overdraft, and that judgment will be reversed and judgment entered here for the appellant company for $155 and interest from the 2d day of April, 1913.