**FITE et al. v. FIRST NAT. BANK OF SEYMOUR.**   **(No. 2516.)**

(Court of Civil Appeals of Texas. Amarillo. Jan. 6, 1926.)

**1. Corporations ⬥423, 430—Not bound, except as to innocent parties, by acts of officer adversely interested, nor by acts of manifest bad faith.**

Officer whose interests are adverse cannot bind corporation except as to innocent parties, nor are acts of manifest bad faith by him binding on it, and strangers participating in such wrong against it may not profit thereby.

**2. Corporations ⬥430—Bank, knowing individual interest of borrowing officer, held to have taken corporate note subject to all infirmities and defenses.**

Bank, whose cashier drew up note, executed in name of store by its manager, and asked latter to get certain others to indorse it, with knowledge that part of money would be applied to manager's debt to bank, which was done, took note subject to all infirmities and defenses which could be urged against it.

**3. Corporations ⬥430—Amount of note executed for store by manager held trust fund, which bank could not divert to payment of manager's individual debt to it.**

In absence of evidence that store manager customarily borrowed money on store's credit with its consent, for payment of his individual debts, or that store held him out as having apparent authority to execute note to bank, amount thereof became trust fund in hands of bank for store's benefit, and bank could not divert fund to payment of manager's individual debt to it.

**4. Bills and notes ⬥335—Indorsers of note in blank held not liable to bank taking it with knowledge of intent to apply funds to payment of indebtedness of party executing it on principal's behalf.**

Under Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—55, 6001—64, 6001—120, indorsers of note in blank, being only secondarily liable, were not liable to bank taking note with knowledge that they were simply indorsers, that party executing it in behalf of corporate principal was acting in his own interest, and that his and bank cashier's intent was to obtain money on principal's credit and apply funds to payment of his indebtedness to bank, irrespective of alleged fraudulent representations by him to secure such indorsers' signatures.

**5. Corporations ⬥430—Application of proceeds of note, executed on behalf of store by its manager, to payment of latter's indebtedness to bank, held not authorized by store's indebtedness to manager.**

That store was indebted to its manager, who executed note in its behalf to bank, did not justify latter in applying part of proceeds to payment of his individual indebtedness to bank, where ledger sheets introduced to prove indebtedness to manager did not show that he credited his account against store with amount of such payment, directors of store testified that they did not know of its indebtedness to manager, and it was not shown that store had authorized him and bank to settle indebtedness in such way.

**6. Evidence ⬥354(5)—Ledger sheets held inadmissible to show store's indebtedness to manager.**

Ledger sheets *held* inadmissible to prove store's indebtedness to its manager, where it was not shown that ledger was book of original entry, entries were made on pad book, which was not produced nor its absence accounted for, particular items entered by manager, as to which sheets were not admissible, were not shown, no witness testified that ledger was correctly kept, and no evidence explaining various items of debit and credit was offered.

**7. Evidence ⬥271(18)—Entries on store's books by manager, about to pledge its credit to make payment on his debt to bank, inadmissible as self-serving and untrustworthy.**

It being to interest of store manager, about to pledge its credit for purpose of making pay-

ment on his individual indebtedness to bank by executing note on store's behalf, that entries on its books show its indebtedness to him, all entries made by him were inadmissible as self-serving and not made under circumstances importing trustworthiness and precluding probability of falsity.

Appeal from District Court, Baylor County; J. H. Milam, Judge.

Action by the First National Bank of Seymour against J. W. Fite and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

Tirey & Tirey, of Waco, for appellants.

Dickson, Newton & Dickson and J. A. Wheat, all of Seymour, for appellee.

HALL, C. J. The appellee bank instituted this suit to recover a balance of $7,600 alleged to be due it upon a promissory note executed in the sum of $9,450 by Farmer's Store by E. H. Pistole, manager; upon the back of which note was indorsed the following, "E. H. Pistole, J. W. Fite, F. M. Townzen, O. H. Harrison"; and bearing the following credits: "April 9, 1921, paid $664.95;" "April 9, 1921, paid $1,396.41." It is alleged that Pistole suicided soon after the execution of the note, and was, at the time the note was made, and since, insolvent. The prayer is for a judgment against the other indorsers for the balance due, with interest, and 10 per cent. attorney's fees.

The appellants answered by general denial, and specially alleged that the note sued on was, in so far as they are concerned, without any consideration; that it was executed for the apparent purpose of borrowing money for the Farmer's Store, a corporation, which was at that time being managed by E. H. Pistole, and that it is an obligation of the Farmer's Store, and that said store was the principal obligor, and that these defendants were merely indorsers of the note; that these facts were known to the bank, which also knew that said defendants were not to receive, and did not receive, any individual benefit by reason of their indorsement of the paper; that the Farmer's Store was doing business as a corporation in Seymour, Baylor county, Tex., as a general mercantile concern, which was known to the bank, and that said bank knew that the money which was derived from the note was used by E. H. Pistole in payment of the latter's personal indebtedness to said bank; that the officers and agents of the bank connived and conspired with Pistole in his misappropriation of the funds derived from the note and belonging to the store, and in converting said funds, and diverting the proceeds of the note to the personal benefit of Pistole; that said funds were applied by the bank to the payment of Pistole's indebtedness to it, and that the store did not receive any benefit from the note; that at the time of the execution of the note George Plants was the cashier of the plaintiff bank, and entered into a fraudulent conspiracy with Pistole, whereby the said Plants, as cashier of said bank, acting for it, used said funds of the Farmer's Store in paying off debts due it by Pistole; that at that time Pistole was indebted in his individual capacity to the bank in the sum of about $25,000, and that the said Plants and Pistole, for the purpose of defrauding the store and these defendants, conspired to have said note executed by the store and to have the same indorsed by these defendants for the fraudulent purpose of using the money obtained upon the note, or a part thereof, to be credited to Pistole's private account and paid upon his private debts due said bank, by reason of which facts the note is fraudulent, without consideration, and that defendants, as indorsers, are not liable thereon; that defendants would not have indorsed said note if they had known of the fraudulent purpose of Plants and Pistole in its execution.

By supplemental pleadings, the plaintiff bank alleged that on the 29th day of April, 1918, and for more than a year prior thereto, the defendants, Fite, Townzen, and Harrison, were directors of the Farmer's Store, a private corporation, and constituted a majority of the board of directors of said corporation, actively directing its affairs and the conduct of its business; that they knew, or should have known by the use of ordinary care, the condition of the Farmer's Store and its management by Pistole, their codirector; that on or about the 1st day of July, 1917, the said store opened an account with plaintiff bank, and at that time executed to said bank its two promissory notes for the sum of $5,000 each, due in four and six months after date respectively, signed "Farmer's Store, by E. H. Pistole, manager," which said notes were also signed by Pistole, Fite, Townzen, and Harrison; that for some time thereafter, to the knowledge of defendants, Pistole had a private cotton account with plaintiff, and that on the 26th day of November, 1917, when the first $5,000 note matured, Pistole suggested to Plants that the former would pay off said note by his personal check upon his individual cotton account with plaintiff; that on the 29th day of April, 1918, Pistole, as the manager of the store, agreed to and did execute and deliver to the bank the note for $9,450 sued on herein; that the sum of $7,600 of the proceeds of said note, at the request of E. H. Pistole and upon the check executed by him as manager of the store for said amount, was on said date placed to the credit of his personal account by the bank; that the remainder of the proceeds of said note was applied to the payment of an acceptance of said store for a car of feed; that at that time and prior thereto the store was indebted to Pistole for money which he had advanced to it out of

his private account, equal to, or in excess of $7,600, and that defendants at no time denied liability on said note until November, 1918, when defendants' attorney notified Plants that defendants would contest their liability. Wherefore defendants are estopped to deny their liability.

By supplemental answer, defendants alleged that they had been released from liability by reason of the plaintiff's failure to file suit upon the note until after the second term of the court after the maturity of said note; that they had executed the note because of the fraudulent representations of Pistole, who was acting for the bank in securing their indorsement to the effect that the store needed the note for the purpose of obtaining money to conduct the business and affairs of the store; that in truth and in fact it was being executed for the fraudulent purpose, unknown to defendants, of enabling the bank and Pistole to apply the proceeds to the payment of the latter's private indebtedness to the bank; that in said transaction the interest of Pistole was, to the knowledge of the bank, adverse to the interest of the store, and there being no one present to represent said corporation in said transaction, the note was a nullity; that the bank is not an innocent holder for value in due course; that neither the store nor the defendants are liable for the balance sued for.

The case was submitted to a jury upon two special issues, the findings being as follows:

"(1) Farmer's Store was indebted to E. H. Pistole at the time he checked out to the payment of his private indebtedness the proceeds of the note sued on.

"(2) That the indebtedness of the Farmer's Store to Pistole amounted to $12,674.16."

From the judgment entered for plaintiff bank in accordance with these findings, this appeal is prosecuted.

The statement of facts discloses that Pistole had the management and control of the business of the Farmer's Store; that the defendants herein, although directors, were sometimes consulted by Pistole, but that they exercised very little authority in the conduct of the business.

Plants, the cashier of the bank, testified, in part, as follows:

"At the time the note sued upon was executed Pistole owed the bank $25,567. I drew up the note and asked Pistole to get the appellants herein, Harrison, Fite, and Townzen, to indorse said note. I had an understanding with Pistole that he, Pistole, would take the note to Harrison, Fite, and Townzen and get them to indorse it. * * * I knew at the time that there was $7,600 of the money out of the note going to pay Pistole's private account due the bank. * * * I would not have asked him to have gotten this note to be signed, the Farmer's Store, by E. H. Pistole, manager, and to have gotten these indorsers on it, if Pistole had not been indebted to the bank personally. * * * When he brought it back I gave the store credit for $9,000, and right after I gave the store credit for $9,000 on the bank book, I took a check from him for $7,600 at the same time. I applied this to his credit on his personal account. All that happened the same day, I presume the same time. * * * When he brought back the note for $9,450, I did not call Harrison and Fite and Townzen, these defendants, and asked them if the store owed Pistole any money."

[1] Briefly, it may be stated that by uncontradicted testimony it is shown that the Farmer's Store, a corporation, did not receive any part of the $7,600 balance sued for herein, but that by an agreement between the cashier of the bank and Pistole said sum was to be loaned upon the credit of the store and the money applied to the payment of Pistole's indebtedness to the bank. It further appears that when Pistole secured the indorsement of the defendants upon the note he was not acting as agent for the store, but was acting in his own interest and to the interest of the bank, and adversely to the interest of the store. It was not shown that Pistole was authorized by the store to pledge its credit for the purpose of securing funds with which to pay his private obligations. It is a general rule that an officer whose interests are adverse cannot bind the corporation, except as to innocent parties, nor are acts of manifest bad faith on the part of the officer binding on the corporation, and strangers who participate in such wrong against the corporation may not profit thereby. Harwood v. Fort Worth National Bank (Tex. Civ. App.) 205 S. W. 484; Id. (Tex. Com. App.) 229 S. W. 487; Tenison v. Patton, 95 Tex. 284, 67 S. W. 92. Williams, Justice, said in the Tenison Case, supra:

"The corporation is a separate entity for which its board of directors acts. The persons having the beneficial interest in the property are the stockholders, but their rights are centered in the corporation and are managed and controlled through the board of directors as the active representative of the company, and it is through it and not the stockholders that business dealings are carried on. When a personal interest of one of them springs up adverse to that of the corporation, it disqualifies him to act concerning it as one of the representatives or agents." Amarillo National Bank v. Harrell (Tex. Civ. App.) 159 S. W. 858.

"As a general rule, corporation directors and officers cannot represent the corporation in matters in which they are personally interested, and hence they cannot bind it by any contract or transaction entered into with themselves individually or with others in which they have a personal interest where their own interests and those of the corporation may conflict. * * * The third person who deals with the officer or agent in such a case cannot held the corporation liable on the contract where he has knowledge of the officer's or agent's breach of trust, or is chargeable with knowledge under the circumstances, and it is sufficient to

put such third person on notice that he has knowledge that the officer or agent has an interest in the matter adverse to that of the corporation. * * * A third person is chargeable with knowledge of an officer's breach of trust and acts at his peril where he receives from such officer the securities, funds or property of the corporation as security for, or in payment of his personal debt of such officer or agent. * * * In accordance with this rule, unless the corporation either directly or inferentially authorizes or assents to the transaction, one who accepts the check of a corporation in payment of the personal obligation of an officer thereof is chargeable with notice of the account on which the check is drawn and of the officer's lack of authority to draw or use it for his own benefit, and hence, takes the risk of not being able to recover on the check or of being required to restore its proceeds to the corporation in the event the corporate funds are thereby misapplied." 14a C. J., pp. 362, 364, § 2224.

"A corporate agent cannot use its funds to pay his private debt. So an officer, although the principal stockholder, cannot use the bank deposit of the corporation to pay his individual debt to the bank." 3 Fletch. Cyc. Corp. § 1911; American Bonding Co. of Baltimore v. Laigle Stave & Lumber Co., 111 Ark. 151, 163 S. W. 167; Buena Vista Veneer Co. v. Hodges, 116 Ark. 253, 172 S. W. 868; El Capitan Land & Cattle Co. v. Boston-Kansas City Cattle Loan Co., 65 Kan. 359, 69 P. 332; Scott v. Farmers' & Merchants' Bank, 97 Tex. 31, 75 S. W. 7, 104 Am. St. Rep. 835.

[2, 3] It is not contended that the plaintiff bank in this case is a bona fide holder of the note, and, under the testimony of Plants, it took the note subject to all infirmities and defenses which could be urged against it. The record shows that Pistole committed suicide a day or two after executing the note. This was followed by an immediate investigation of the affairs of the store, when it was found that the store was hopelessly insolvent. The store was thrown into bankruptcy as soon as its insolvent condition was discovered, and the assets applied through the bankruptcy proceedings towards the payment of its creditors. It was not shown that Pistole had customarily borrowed money upon the credit of and with the consent of the store for the purpose of paying his individual debts. There is no evidence in the record which tends to show that the store held Pistole out as having apparent authority to execute the note in suit, under the circumstances shown. Upon the execution of the note, and its delivery to and acceptance by the bank, the $9,450 became a trust fund in the hands of the bank for the benefit of the store, and the bank could not permit this fund to be diverted to the payment of the individual debt of Pistole or any one else, U. S. F. & G. Co. v. Adoue & Lobit, 104 Tex. 379, 137 S. W. 648, 138 S. W. 383, 37 L. R. A. (N. S.) 409, Ann. Cas. 1914B, 667; 14 C. J. 111; McCullam v. Mermod, Jaccard & King Jewelry Co. (Mo. App.) 218 S. W. 345; El Fresnal Irr. L. Co. v. Bank of Washington (Tex. Civ. App.) 182 S. W. 701; Producers' Oil Co. v. Green (Tex. Civ. App.) 212 S. W. 70; Fox v. Robbins (Tex. Civ. App.) 62 S. W. 815.

[4] In our opinion, the note, as an obligation of the Farmer's Store, is a nullity as to the balance involved in this suit. When the note was presented to the defendants, the appellants herein, by Pistole, he represented to them that he wanted to borrow the money for the purpose of using it in carrying on the business of the store during the summer months; and the defendants offered to testify that such representations were made, and that they would not have indorsed it if they had known that any part of the proceeds of the note was to be applied to the payment of Pistole's private indebtedness. This testimony was excluded by the court. If it had been admitted, of course, it would have established the defense of fraud pleaded by the indorsers in securing their signatures; but we have concluded that such evidence is not necessary in order to secure their release from liability.

It is said in 1 Brandt, Suretyship and Guaranty (3d Ed.) § 468:

"A creditor obtained the note of a principal by fraud, and this note was afterwards guaranteed by a third person. In a suit against the guarantor it was held that he might show, as defense to himself, the fraud upon his principal. The court said that a person who obtained an obligation from the principal by fraud, could not wipe out the fraud by obtaining a surety. 'Personal defenses do not pass to others. * * * The defenses inherent in the thing, such as, among others, fraud and duress, are available as to sureties.' * * * A creditor for a private debt due him by one member of a firm took a note to which the firm name was signed, by such member, without the knowledge or consent of the other partner. A surety signed the note, supposing it to be the note of the firm, and it was held that as the partner who did not sign the note was not bound, the surety who supposed he was becoming responsible for both parties, was not bound. * * * Where one partner is induced to become surety on the note of his co-partner under the belief that the proceeds were to be used for partnership purposes, and the money is actually used in gambling, with the knowledge of the payee, he is not liable in a suit by the payee. Fraud vitiates all parts of an inseparable contract."

See Trammell v. Swan, 25 Tex. 474.

The bank knew that the defendants herein were simply indorsers, and upon its face the note purports to be an obligation of the store, upon which the defendants are merely indorsers for the accommodation of the bank. As such, they are only secondarily liable. Waters v. Atlanta National Bank (Tex. Civ. App.) 261 S. W. 153. The Uniform Negotiable Instruments Act (V. A. C. S. Supp. 1922, art. 6001—120) provides that a person secondarily liable upon a negotiable instrument is discharged by any act which discharges the instrument, or by the discharge of a prior

party. Id., subsec. 55, provides that the title of a person who negotiates an instrument is defective, within the meaning of this act, when he obtained the instrument, or any signature thereto by fraud, duress, or force and fear or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to fraud. Id., subsec. 64, provides that where a person not otherwise a party to an instrument places thereon his signature in blank before delivery, for the accommodation of the payee, he is not liable to the payee as an indorser, but only to any good faith holder to whom the payee may have transferred the paper.

The validity of the note given, under the circumstances stated, may be questioned by the indorsers, since its enforcement would result in injury to them. 14a C. J. 413, § 2260. At the time the bank took the note it knew that Pistole was acting in his own interest and for the interest of the bank, and also knew that the intention of its cashier and Pistole was to obtain the money upon the credit of the store and to apply the funds so obtained to the payment of Pistole's indebtedness. Whether there was actual fraud or not, the transaction amounts to constructive fraud, and results in avoiding the obligation as to the store. Although the indorsers were not permitted to prove the fraudulent representations which they claim Pistole made in order to secure their respective signatures, the note shows that they merely indorsed it in blank; that it is primarily an obligation of the Farmer's Store, and they had a right to believe that the loan would be a bona fide transaction, and that the store would obtain the benefit of the loan. Since the record unquestionably shows that the contrary is true, there is sufficient proof of fraud to release the indorsers. Since the unauthorized and fraudulent conduct of the cashier and Pistole renders the note invalid as to the store, no judgment can be rendered against the indorsers, who are only secondarily liable. Hackney Mfg. Co. v. Celum (Tex. Civ. App.) 189 S. W. 989; Wills v. Tyer (Tex. Civ. App.) 186 S. W. 862; Garrett v. Dodson (Tex. Civ. App.) 199 S. W. 675; 1 Defenses to Commercial Paper (2d Ed.) §§ 38, 43, 47, 48.

[5] The bank attempts to justify the transaction between its cashier and Pistole upon the alleged ground that, at the time Pistole executed the note and applied $7,600 of the proceeds to the payment of his indebtedness to the bank, the Farmer's Store was indebted to Pistole in the sum of $12,000. Two ledger sheets, which it is claimed were taken from the books of the store, were introduced in evidence, over the objections of the appellants, for the purpose of proving that the store was indebted to Pistole at that time. It does not appear that the ledger sheets, even if admissible, showed that Pistole had credited his account against the store with the amount of the payment. The rule with reference to transactions of this character is stated thus, in 14a C. J. § 1901, p. 132:

"A director or officer may become a creditor of the corporation and assert his claim against it, or assign it to another. To be entitled to be upheld by the courts, a transaction crediting a director or officer, a creditor of the corporation, or giving him security for the debt, or paying or satisfying a debt, must be properly authorized by the corporation. A court of equity subjects such transactions to close scrutiny, and refuses to lend its aid to their enforcement when it finds that they were attended by fraud, unfairness or illegality. The burden of proving the bona fides of the debt rests with the officer."

Each of the defendants, as directors, testified that they did not know that the Farmer's Store was indebted to Pistole in any sum, and it appears that his salary amounted to only $70 a month. Moreover, it was not shown that the Farmer's Store had in any way authorized Pistole and the bank to settle its indebtedness to Pistole in this way; and, under the rule above stated, no indebtedness has been shown even if the ledger sheets were admissible in evidence.

[6] We do not think it is necessary to pass upon the question of the admissibility of the ledger sheets in evidence. In the event, however, that it should be a material question, we are of the opinion that the sheets were not admissible. It was not shown that the ledger from which they were taken was a book of original entry. The entries, according to the testimony, were made upon a pad book. The pad book was not produced, nor was its absence accounted for. It appears that three different parties besides Pistole had acted as bookkeeper for the store during the transactions recorded upon the ledger sheets, and it was shown that some of the items were in the handwriting of the various bookkeepers, and some entered by Pistole himself, but the record does not inform us as to the particular items entered by him. Reference to the statement of facts shows that some of the entries are for cash advanced to the store by Pistole. Since entries in a merchant's account books of money advanced or loaned are not competent evidence to show the advance or loan, the ledger sheets are not admissible as to these items. Mings v. Griggsby Construction Co. (Tex. Civ. App.) 106 S. W. 192. No witness was introduced who testified that the ledger was correctly kept. No evidence was offered explaining the various items of debit and credit, and, in the condition the sheets were offered, we seriously doubt the correctness of the court's action in admitting them.

[7] It appears from the record that it was to the interest of Pistole that the entries upon the books of the store should show its indebtedness to him, as he was about to pledge its credit for the purpose of making a payment upon his individual indebtedness

to the bank. Under such circumstances, all entries made by him were self-serving, and were not made under circumstances which imported their trustworthiness and precluded the probability of their falsity. It was not shown that the entries were made in the regular course of business, especially the entries appearing upon the sheets in the handwriting of Pistole. 5 Ency. of Evidence, 263, 264. Aside from this question, however, which we do not decide, the evidence conclusively shows that, in executing the note and securing the indorsement of the appellants, Pistole acted as the agent of the bank and that his interest was adverse to that of the store; that since the note was executed for the avowed purpose of enabling him to misappropriate the funds to be obtained upon it, it is voidable as an obligation, and without consideration. 1 Defenses to Commercial Paper, §§ 342, 346. And since the appellants have the right to insist upon such defense, the other assignments of error become immaterial. The court should have directed a verdict for the appellants.

We therefore reverse the judgment, and here render judgment that the appellee bank take nothing.

Reversed and rendered.