**WEST et al. v. HAPGOOD et al.**

**SAME v. EDWARDS et al.**

**Nos. 14466, 14467.**

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 29, 1943.

Rehearing Denied March 5, 1943.

Walker, Smith & Shannon and Ben M. Terrell, all of Fort Worth, for appellants.

Bullington, Humphrey & Humphrey, of Wichita Falls, and Stine, Bunting & Stine, of Henrietta, for appellee Leola P. Hapgood and others.

H. S. Garrett, of Fort Worth, for appellee Texas Co.

David W. Stephens, W. E. Allen, and P. O. Settle, all of Fort Worth, for appellee Gulf Oil Corporation.

Don Emery and Rayburn L. Foster, both of Bartlesville, Okl., and E. H. Foster and Robt. B. Burgess, both of Amarillo, for appellee Phillips Petroleum Co.

Otis E. Nelson, of Wichita Falls, for appellee R. C. Lipscomb.

Joe B. Hatchitt, of Wichita Falls, for appellee A. R. Dillard and others.

Homer B. Latham, of Bowie, for appellee Glen Grimes.

Clyde Suddath, of Henrietta, for appellee Conrad N. Jordan and others.

BROWN, Justice.

In January, 1881, some ten persons, including Conrad N. Jordan and Yates Ferguson, by instrument in writing, entered into a trust agreement covering certain lands owned by them, or to be acquired by them, and pooled in the trust estate.

The said Jordan and Ferguson were expressly made trustees for the entity which was named the Consolidated Copper Syndicate.

The instrument provides that the trustees shall receive and disburse all monies belonging to the Syndicate; that all title to real or personal estate shall be taken in their names as trustees; that: "They shall see to the execution of the provisions of this Agreement; and shall take, hold or dispose of the properties and rights acquired, and distribute the same or the proceeds thereof, under its terms or by direction of the Syndicate in accordance therewith."

It further provides: "All lands, contracts, agreements, properties, rights and privileges of whatever name or nature heretofore acquired and held by either of the parties aforesaid shall be transferred to, and vested in the said Trustees, and all the personal property hereby is transferred to and vested in the said Trustees, in trust as aforesaid."

In accordance with this trust agreement, the lands, in and under which the title to the mineral estate is involved in the two suits before us, were duly conveyed to said trustees as such, with the exception of one deed that omits the word "Trustees".

The trust agreement specifically refers to holdings in the counties of Clay, Archer and Wichita in the State of Texas.

On June 3, 1882, Jordan and Ferguson, who designated themselves as trustees, executed an instrument, which purports to be a power of attorney, to one F. W. Randall, by and through which they authorized Randall "to contract for the sale and conveyance subject to telegraphic approval by us, the said Trustees, of the purchase price" of lands conveyed to them by certain deeds, which included all of the deeds theretofore executed to Jordan and Ferguson, excepting that certain deed recorded in Vol. H. at page 2 of the deed records of Clay County, which deed was executed by Robt. A. Little and wife "to Conrad N. Jordan and Yates Ferguson, their heirs and assigns", and which covers Lots Nos. 31, 32, 34, 35, 23, 24, 40, 48, 49, 52, 54, 43, 42, 8, 9, 13, 15 and 28 of the Marion County School lands.

On September 11, 1882, Jordan and Ferguson, designating themselves as trustees, executed, in the State of New York, a quitclaim deed to one W. B. Worsham, covering their interest in all of the lands involved in the two suits before us. In this deed they expressly reserved and excepted to themselves, and their successors and assigns, all mines, minerals and mineral rights upon or in said lands, together with the right to prospect for and work the same.

On the same date, Jordan and Ferguson executed an instrument which recites that they and W. B. Worsham have made an agreement on said date, whereby Jordan and Ferguson, the owners of the lands in controversy, have offered to sell said lands to Worsham, "reserving to themselves all mineral rights thereon * * * for the sum of $3012.42 (and other named consideration) and whereas said party of the first part (Worsham) has accepted said offer; Now therefore it is agreed by and between the parties hereto: 1. That said parties of the second part (Jordan and Ferguson) shall execute and deliver to said party of the first part a deed of said lands releasing and forever quitclaiming to said party of the first part all of the rights, title and interest of said parties of the second part in and to said lands, reserving however all mineral rights."

The instrument further recites that immediately upon the execution and delivery of said deed, Worsham shall pay said sum mentioned above and the further sums remaining due and unpaid on the purchase price that were then outstanding.

On September 18, 1882, F. W. Randall, purporting to act as attorney-in-fact for Jordan and Ferguson, executed an instrument purporting to be a release of the reservations mentioned in the quitclaim deed, supra.

This instrument is: "Know all men by these presents, that whereas in a certain deed dated September 11, A. D. 1882, from C. N. Jordan and Yates Ferguson, Trustees of New York to W. B. Worsham of Clay County, Texas, there was reserved in said deed the mineral rights in the Marion County School Land which is the land conveyed in said deed. Now, I, F. W. Randall of Clay County, Texas, acting under P. of ty from said Jordan, Yates Ferguson, Trustees aforesaid, do hereby release all of said reservation made in said deed. Witness my hand this 18th day of September, 1882.

> "C. N. Jordan
> "Yates Ferguson
> "By their Att'y. in Fact
> "F. W. Randall."

The quitclaim deed from the said trustees to Worsham and the purported release of the mineral rights reserved in such deed, were filed for record on the same day, to-wit, September 20, 1882.

On May 2, 1887, the Supreme Court of King's County, New York, made an order appointing Geo. C. Brainerd as receiver, and also trustee in the place and stead of Yates Ferguson, deceased, and Conrad Jordan who was discharged.

In a proceeding filed in the District Court of Travis County, Texas, a receiver was appointed for Consolidated Copper Syndicate, on August 12, 1895.

The Texas receiver having brought suit against Geo. C. Brainerd, receiver, the two suits being so closely related were consolidated, and, upon application of the Texas receiver therefor, a sale was ordered by the District Court of Travis County, covering all of the interest of Consolidated Copper Syndicate in "Abstract 308, Patent 586, Vol. 16, being part of Marion County School Lands", and also all right, title and interest of the Syndicate in all lands and interests in several counties in Texas, including Clay County.

The entire proceeding is regular, including the report of the receiver, the confirmation of the sale and the order requiring a conveyance of the lands and interests to the purchaser, one W. B. Brush.

The appellants in the instant suit claim title through Brush. (The deed to Brush has never been located, but this is no bar to the rights of those claiming under the purchaser at the receiver's sale, as is discussed infra).

W. B. Brush died intestate, without leaving any child or descendant of a child, and was survived by his wife, Sallie Grant Brush, who died testate, but whose will duly probated does not specifically dispose of any of the mineral interests contended for herein.

As will be discussed later, it is contended by some who claim through the Brushes that the will did dispose of all such interests, while others claim that Mrs. Brush died intestate as to such.

On March 11, 1939, Leola P. Hapgood, joined by her husband (she being a daughter of W. B. Worsham, then deceased) brought suit in trespass to try title against Jordan and Ferguson, if alive, and if dead, against their unknown heirs, and against said two persons as trustees, and their unknown beneficiaries, and against "Consolidated Copper Syndicate, a dissolved co-partnership", and against all of the individual members, naming them, and where they are alleged to be deceased, against their unknown heirs, and against "any other unknown persons constituting said partnership", and against Jordan and Yates Ferguson as trustees "and their unknown beneficiaries", and against George P. Warner, receiver, if alive, and against his unknown heirs, beneficiaries and assigns.

The parties defendant were cited by publication, and the suit is to recover: "All those certain blocks of the Marion County School Land, Abstract No. 308, and described as follows: Blocks Nos. 48, 49, 52, 54, 73, 74, 75, 76, 77, 80, 81, 82, 83, 84, 87, 88, 89, 90, 91, 94, 95, 96 and 97."

The allegations are that the plaintiffs "have held peaceable, adverse and continuous title to said land and premises, including all of the oil, gas, and other minerals, and paying all taxes thereon for a period of more than twenty-five (25) years prior to the date hereof, and that the defendants, through Yates Ferguson and Conrad N. Jordan, as trustees, are claiming some right, title, interest, or estate in said lands and premises, which claim is an unfounded claim, void and fictitious, and of no force and effect, and is wholly in-

ferior to the right, title, interest, and claim of these plaintiffs, and such claim casts a cloud upon the title of these plaintiffs."

On the same day (March 11, 1939), Bryant Edwards filed a suit, the petition being in the exact language of the Hapgood suit and against the same parties, in which he sues for these several blocks in said School Land: Nos. 8, 9, 15, 23, 24, 28, 34, 35, 40 and 42.

The bringing of these two suits are evidence of the fact that the respective plaintiffs knew of the existence of the co-partnership, as they called it, known as Consolidated Copper Syndicate and the relationship of Jordan and Ferguson thereto.

On May 16, 1939, the said plaintiffs were awarded judgment for the lands involved as against the defendants as named and designated in the petitions.

The appellants in the cases before us were not parties to such suits and the judgments therein, unless it can be said that they are parties under the theory of virtual representation. This theory we doubt as being applicable.

But be that as it may, if they are to be considered as parties to the said suits, they were given no notice of the pendency of the suits except through process by publication, and they brought the two suits before us as bills of review. This they had the right to do. They also sue in trespass to try title.

Those who are designated as plaintiffs are the persons named in the will of Mrs. Brush as devisees, or they are heirs of a deceased devisee, and they have made all other Brush heirs, who were not so named in the will, defendants.

Such defendants assert that Mrs. Brush died intestate as to all mineral rights involved here.

Mrs. Brush's will contains this clause, after naming those whom she desires to leave the bequests designated: "I further direct that if there be any monay (meaning money) belonging to my estate that is not taken up by the payment of my just debts including funeral expenses and expenses of last sickness, then that shall be divided between the above beneficiaries in the same proportion as to said bequests bear to the said sum of $6,000.00."

The "above beneficiaries" are: Mrs. Emma Grant West, Mrs. Dorothy West Martin, Mrs. Laura West Boldrick, Robert J. Grant, Zurilda Grant, Margaret Helen Grant, Annie Ruggles David and Essie Grant Clarkson.

The two bills of review are identical in their allegations and seek to recover the mineral interests that were awarded to Bryant Edwards and the Hapgoods in the two suits brought by such named defendants in 1939, as related above.

The defendants in the bills of review rely upon the deed executed by Jordan and Ferguson to Worsham and the "release" of the mineral rights executed by Randall as attorney in fact for Jordan and Ferguson.

They also allege adverse possession for more than 25 years, and claim under limitations covering periods of three, five, ten and twenty-five years, as well as upon laches and stale demand, and upon abandonment of title and interest, and Bryant Edwards pleads the further defense of innocent purchaser for value and without notice of any claim on the part of plaintiffs.

The causes were tried to a jury and the following findings were made: (We copy Issue 1 and the explanatory instructions, etc. because of the importance of the questions raised in relation thereto).

"No. 1. Do you find from a preponderance of the evidence that F. W. Randall was authorized by Yates Ferguson and Conrad N. Jordan to execute the instrument of release of the mineral reservation which was dated Sept. 18, 1882, and acknowledged before G. P. Mead, a notary public, on the same day and filed for record Sept. 20, 1882?

"In considering your answer to the foregoing issue you will be governed by the following instruction: The instrument inquired about is an ancient instrument, having been of record for more than thirty years and there exists the presumption that Randall was so authorized to execute the same.

"Such presumption is rebuttable by evidence however, and it is for you to find whether or not said presumption has been so rebutted in this case.

"There has been introduced in evidence a certain instrument dated June 3, 1882, executed by Yates Ferguson and Conrad N. Jordan Trustees to F. W. Randall granting certain power to said Randall; you are instructed that such instrument

was insufficient to authorize Randall to execute the release dated Sept. 18, 1882."

The jury answered the issue, "Yes".

No. 2: That prior to Dec. 14, 1905, Ferguson and Jordan ratified the release of the minerals.

No. 3: That if Consolidated Copper Syndicate was the owner of the minerals in any of the lands in controversy, the partners in said company, prior to the appointment of the Texas receiver, ratified the said release.

No. 4: That the receivers of said company ratified the release, prior to Dec. 14, 1905.

No. 5: That if Ferguson and Jordan were the owners of the minerals in any of the lands in controversy after the execution of the release, they, prior to Dec. 15, 1905, abandoned their interest in the title to same.

No. 6: That if Consolidated Copper Syndicate was such owner, after the execution of the release, the partners, prior to the appointment of the Texas receiver, abandoned their interest in same.

No. 7: That the receivers, prior to Dec. 14, 1905, abandoned such interest.

No. 8: That the deed executed by Jordan and Ferguson to Worsham and the alleged release of the minerals executed by Randall constituted a single business transaction.

No. 9: That the deed from Ferguson and Jordan to Worsham was delivered and accepted by Worsham on condition that the release of the mineral reservation be made and delivered.

No. 10: That Worsham and those under whom he claims have held peaceable and adverse possession of the lands for a period of 25 years beginning at some time prior to May 13, 1941, under a claim of right in good faith under a deed or deeds, or under an instrument or instruments of writing purporting to convey the lands, which deed or deeds, or instrument or instruments, purporting to convey the same have been duly recorded in the Deed Records of Clay County, for a period of 25 years, prior to May 13, 1941.

No. 11: That the defendants claiming under Worsham have held peaceable and adverse possession of the lands, continuously cultivating, using or enjoying the same for a period of 25 years, beginning Sept. 18, 1882, and ending prior to May 13, 1941.

No. 12: That the parties claiming under W. B. Brush have not exercised dominion over the lands or have not paid taxes thereon one or more years during the period of 25 years next preceding May 13, 1941, and that the defendants claiming under Worsham have openly exercised dominion over and asserted claim to said lands and have paid taxes thereon annually before becoming delinquent, for as many as 25 years during such period.

No. 13: Finds for the defendants under Worsham as to adverse possession for 10 years prior to May 13, 1941.

No. 14: Finds for the said defendants as to adverse possession for 5 years, prior to May 13, 1941.

No. 15: Finds for such defendants as to adverse possession for a period of 3 years, prior to May 13, 1941.

No. 16: Finds that the defendants claiming under Worsham have had peaceable and adverse possession of the lands and the waters under the surface and have been using and enjoying the lands and water and adversely claiming the minerals in the lands for a period of 10 consecutive years after the execution of the deed to Worsham and prior to May 13, 1941.

No. 17: That Conrad N. Jordan and Yates Ferguson acquired the lands conveyed to them by Robt. A. Little and wife, dated Aug. 24, 1881, and recorded in Vol. H. page 2 of Clay County deed records, in their capacity as trustees of Consolidated Copper Syndicate. (This is the only deed that does not specifically designate the grantees as trustees).

No. 21: That Worsham did not pay Jordan and Ferguson any consideration for the lands conveyed to him other than that mentioned in the instrument dated Sept. 11, 1882.

On motion made by Edwards and certain other defendants, the trial court disregarded the answer made by the jury to issue No. 17, on the theory that there is no evidence to support the theory that Jordan and Ferguson held the lands involved in the deed in the capacity of trustees of Consolidated Copper Syndicate.

The trial court overruled all objections to the charge, and all requests for peremptory instructions presented by all parties plaintiff and defendant, and on motion for judgment based on the verdict rendered judgment for the defendants.

These issues were thus determined in the Bryant Edwards case.

As to the Hapgood case, the first 17 issues submitted are identical with the first 17 submitted in the Edwards case, and the findings thereon are identical.

In addition to such the jury found that Ferguson and Jordan acquired the lands in controversy under the several deeds referred to in the issues, in their capacity as trustees of Consolidated Copper Syndicate. All of these deeds so designated the grantees. The issues are numbered 18, 19 and 20, and the 21st issue is identical with such numbered issue submitted in the Edwards case.

The same motion to disregard the jury finding as to issue No. 17 was urged and the same ruling was made thereon.

Both cases took the same course in the trial court, with a resultant judgment for the defendants.

We have endeavored to give as condensed a statement of the two cases as is possible and realize that our opinion is all too lengthy, but we are not able to say less, in our judgment, in order to make the matters involved understandable to those who are not parties to the proceedings.

The cases are brought to us under one brief and we will render one opinion, but separate judgments in each case.

We next give the points relied upon by appellants and the counter points presented by appellees.

The first point contends that the power of attorney from Jordan and Ferguson and introduced in evidence was insufficient to authorize Randall to either release or convey the mineral interests to Worsham.

We understand that this point is conceded by the appellees.

The trial court instructed the jury that such power of attorney was insufficient to authorize the execution of the instrument relied upon by appellees and appellees made no objection to the charge.

The second point asserts that the undisputed evidence shows that all appellees and the persons claiming under them deraign their titles under the above mentioned insufficient power of attorney, and that this was the power of attorney referred to by Randall in the purported "release", and was the only power of attorney executed by the trustees to Randall.

The third point contends that no presumption can arise that Randall had any power of attorney or authority to release, impair or extinguish the mineral reservation, because the declaration of trust which created Consolidated Copper Syndicate appointed Jordan and Ferguson as trustees and they alone possessed authority to convey property owned by such Syndicate, and they were without power to delegate to Randall authority to convey the real property owned by the Syndicate, or to release the mineral reservation made in the deed dated Sept. 11, 1882.

And it is further contended that, if Jordan and Ferguson executed any other power of attorney to Randall purporting to give Randall authority to release the said mineral reservation, same was and is void.

The fourth point contends that the appellees cannot claim to be innocent purchasers, because they are charged with notice of the fact that the mineral rights were severed and were reserved to the said named trustees, in that the quitclaim deed from the trustees to Worsham so provides, and said deed has been on record in the deed records of Clay County since 1882, and all of the appellees deraign title through such deed.

The fifth point asserts that all lands involved in the Hapgood suit, except Blocks 48, 49, 52 and 54, were conveyed to Jordan and Ferguson as trustees, they being so designated in the recorded deeds, and that such appellees are charged with notice that Jordan and Ferguson acquired the lands in their capacity as trustees; and it is further contended that the word "Trustees" following the names of the grantees in these deeds cannot be rejected as mere surplusage in determining whether such appellees were chargeable with notice of the fact that the lands were acquired by the grantees as trustees.

The sixth point contends that the appellees have not acquired title to the minerals by adverse possession because the undisputed evidence shows that no oil, gas or other mineral was ever produced from the lands and there has been no act of possession other than possession of the surface rights for ordinary ranch purposes, and that such possession is insufficient to support a title by limitations.

The seventh point contends that the deed executed by the trustees on Sept. 11, 1882, and the "release" executed by Randall on

Sept. 18, 1882, did not constitute one instrument, or a single business transaction, as contemplated in law; and that there is no evidence that raises the issue of fact submitted by the trial court in special issue No. 8.

The eighth point asserts that the trial court erred in submitting said issue No. 8, because it calls for the opinion of the jury on a question of law and not for a finding of fact; and it conclusively appears as a matter of law that the quitclaim deed executed by the trustees and the "release" executed by Randall do not constitute a single business transaction.

The ninth point contends that the evidence is wholly lacking to support the giving of special issue No. 9.

The tenth point contends that the trial court erred in submitting issue No. 9, because, under the terms of the declaration of trust, Randall had no power to assent to a conditional acceptance of the deed from the trustees, and the trustees had no power to delegate any such authority to Randall.

The eleventh point asserts that issue No. 9 is confusing and misleading in that it does not call for a finding as to whether Randall assented to the alleged acceptance, or whether Jordan and Ferguson, the trustees, assented thereto; and the trial court cannot, therefore, ascertain from an affirmative answer to such issue whether Randall on the one hand, or the said trustees on the other hand, made the alleged agreement to change the terms of the deed executed by the trustees to Worsham.

The twelfth point contends that the proceedings in the district court of Travis County operated to vest the title to the minerals in question in W. B. Brush; and that these proceedings constitute sufficient muniments of title in Brush to support appellants' claims.

The thirteenth point asserts that the record and undisputed evidence show that appellants were not parties defendant in the two suits brought by Hapgood and Edwards on March 11, 1939, and the judgments rendered in such suits are not binding upon appellants and need not be set aside as a prerequisite to the recovery of a judgment by appellants under the trespass to try title counts brought by them.

The fourteenth point contends that if appellants are mistaken as to their status in the said two suits brought by Hapgood and Edwards, nevertheless they have presented, timely, their bills of review showing a meritorious defense to such suits.

The fifteenth point contends that, as against the appellees, who merely claim as heirs at law of Sallie Grant Brush, they were entitled to have the peremptory instruction requested by them because, when properly construed, the will of Sallie Grant Brush operated to dispose of and to actually devise the mineral interests to those who are named as devisees in her will.

The sixteenth point asserts that no presumption of any ancient grant to Worsham could arise because the minerals were reserved in the deed from the said trustees and there was no evidence that those who would be adversely affected by such a presumption had any knowledge of or acquiesced in the claim of title on the part of Worsham and his successors.

The seventeenth point asserts that there was no evidence that appellants or their predecessors in title had any knowledge that Worsham or his successors were asserting title to the minerals; and none that Worsham ever knew that the land in question were not mentioned in some reports filed in the New York and Texas receivership suits, and in the inventory of the estate of Sallie Grant Brush, and none that Worsham and his successors in title were thereby deceived and misled; and, therefore, no estoppel has arisen as against appellants or their predecessors in title.

The eighteenth point challenges the submission of issue No. 2 for want of support in the evidence.

The nineteenth point challenges the submission of issue No. 3 for the same reason.

The twentieth point makes the same challenge as to issue No. 4.

The twenty-first point contends that, the mineral interests owned by the said Trustees being a perpetual fee simple title which could not be lost by abandonment, nondrilling, non-use or non-development, the trial court erred in submitting to the jury issues Nos. 5, 6 and 7.

The twenty-second point contends that there being a legal fee simple title to the minerals vested in appellants and their predecessors in title, the trial court erred in finding in the judgment that appellants' suit was barred by laches.

The twenty-third point contends that the trial court erred in submitting issue No. 1 to the jury because there was no evidence

to support it, and the issue does not call for a finding of facts that would constitute authority on the part of the agent, Randall, but same simply calls for a legal opinion from the jury and left the jury free to set up its own standard as to what would constitute authority of the agent.

The twenty-fourth point contends that there is error in instructing the jury, in connection with issue No. 1, that a presumption exists that Randall was authorized to execute the "release", because the Trustees were without power to delegate any such authority, and further, that the instruction is on the weight of the evidence in that it assumed and instructed the jury that such authority did exist.

The twenty-fifth point asserts that if appellants were not entitled to an instructed verdict, then they were entitled to have submitted separately and affirmatively the issue of whether or not the power of attorney in evidence (dated June 3, 1882) was the power of attorney and the only power of attorney relied upon and held by said Randall.

Appellees reply by the following counter points.

### No. 1.

(a) The trial court's judgment is proper because the rights asserted by appellants are deraigned through Consolidated Copper Syndicate and they failed to show that said Syndicate ever acquired title to the lands.

(b) The judgment and orders of the District Court of Travis County relied upon to vest title in W. B. Brush purport to vest title only as to the unsold part of a larger amount of land, but same wholly fail to show what part had been previously sold and therefore they are insufficient to show that the lands in controversy passed to said Brush.

### No. 2.

The judgment is proper as to Blocks 8, 9, 15, 23, 24, 28, 34, 35, 40 and 42 involved in the Edwards suit, and as to Blocks 48, 49, 52 and 54, involved in the Hapgood case, because appellants failed to show that said Syndicate ever acquired title to such lands.

### No. 3.

(a) The titles of appellees are not dependent upon the sufficiency of the power of attorney to Randall, that was put in evidence.

(b) The evidence does not show that appellees deraign title under such power of attorney, and the "release" relied upon did not refer to such instrument.

### No. 4.

(a) A trustee with power to sell has the authority to delegate to an agent the ministerial act of executing a conveyance and the doctrine of non-delegability of authority is not applicable to the case at bar.

(b) The "release" relied upon is an ancient instrument. It contains recitals that Randall was authorized to execute same. This instrument has been unchallenged for more than 50 years, during all of which time Worsham and his heirs and assigns have been constantly exercising full acts of ownership and dominion over the entire fee estate. The "release" makes no reference to any particular authority or power of attorney under which Randall purported to act, and it will not be presumed that he acted under an insufficient power of attorney but, to the contrary, it will be presumed that Randall had other valid authority, even though an insufficient or incomplete power was shown to be in existence. Therefore, the evidence does not show and it will not be presumed that appellees deraign their titles under an insufficient power of attorney, when it is further shown that all of the subsequent acts of the said Syndicate, its trustees, receivers and co-partners, as well as those of W. B. Brush and his heirs and devisees, were consistent with the validity of the conveyance relied upon by appellees.

### No. 5.

(a) The deed from the trustees to Worsham and the "release" executed by Randall constituted a single business transaction, as was found by the jury, and such instruments conveyed the land to Worsham, as distinguished from the mere claim of title thereto, and therefore, Worsham and those holding under him were purchasers in good faith and for a valuable consideration, and they are entitled to be protected against any restriction upon the authority of the trustees to convey the lands, either through themselves or through an agent, even if such restriction existed.

(b) The "release" and the deed from the trustees (to which the "release" refers) must be construed together and, when this is done, it appears that the trustees intended to convey the lands and the minerals

thereunder, and such two instruments do not constitute a quitclaim deed but same constitute a deed of conveyance and on the faces thereof grant and convey all such without reservation. Therefore, appellees are innocent purchasers and should be protected as such; and the trial court correctly found them so to be.

(c) Inasmuch as appellees hold the legal record title to the lands and minerals, or at least hold the apparent legal record title, while the title claimed by appellants is at most an imperfect, inchoate and equitable title, the burden was on appellants to show that appellees were not innocent purchasers, and they failed to discharge such burden.

### No. 6.

Although the deeds to a part of the lands contain the word "Trustees", following the names of the grantees, no other recital of any trust was shown, and therefore the word "Trustees" will be treated as a description of the person and mere surplusage, and would impart no notice to a purchaser of the evidence of a trust or of want of authority to sell and convey the lands, or to appoint agents and attorneys to do so.

### No. 7.

(a) The deed containing the mineral reservation and the "release" of such reservation, being contemporaneously executed, constituted one single business transaction whereby Worsham acquired the fee simple title to the land and minerals thereunder, and there was no severance of the surface and mineral estates, and inasmuch as the undisputed evidence showed that Worsham and those claiming under him have held hostile and adverse possession for a period of more than 50 years before suit was brought, during such time exercising all rights of ownership and dominion thereunder, claiming under a deed and deeds duly recorded, for all such time, and paying taxes thereon annually, and inasmuch as the evidence shows that appellants never made claim to the lands, and never exercised any dominion thereon and thereunder, irrespective of any invalidity in the conveyance to Worsham, the title became fully vested in appellees by the Statutes of Limitation.

(b) Whether they did or did not do so, the members of the Syndicate could have empowered the trustees to delegate to Randall authority to do what Randall undertook to do. But, as an incident to the status occupied by the trustees, they were impliedly empowered to commit to Randall the performance of the mechanical or ministerial act of executing and delivering the "release" in question, at least in the absence of an explicit denial of such power in the trust agreement, and there was no such denial. Therefore appellees, and those under whom they claim, were in no event required to assume that the "release" was void, but, on the contrary, were entitled to assume that it was valid. And, therefore, the two instruments on which appellees rely constitute "a deed or deeds, or any instrument or instruments, purporting to convey" the lands and the minerals thereunder, and did "convey the apparent record title thereto" within the meaning and intendment of the provisions of Article 5519, Rev. Civil Statutes of Texas, Vernon's Ann.Civ.St. art. 5519, and the verdict of the jury finding that the title to the lands and minerals is well vested in appellees under said Statute, supports the judgment of the trial court.

(c) If appellants and those under whom they claim ever held the apparent record title, nevertheless, the evidence disclosed and the jury found that they "have not exercised dominion over such land or have not paid taxes thereon, one or more years during the period of twenty-five years next preceding these suits", and, furthermore, have not exercised such dominion over the property nor have they paid taxes thereon for more than 50 years next preceding the filing of said suits; and that "during such period the opposing parties and those whose estate they own" (meaning appellees) and those under whom they claim "have openly exercised dominion over and asserted claim to same and have paid taxes thereon annually before becoming delinquent for as many as 25 years during such period. Therefore such facts constitute prima facie proof that the title to the lands and to the minerals thereunder have passed to appellees, and such prima facie proof not having been overthrown, it is an established fact that the title to the lands and minerals has passed to appellees, and the trial court was authorized and required to render judgment for appellees under the provisions of Article 5519a, Vernon's Ann.Civ.St.

### No. 8.

The eighth point asserts that the court will necessarily consider the transaction in the light of the conditions and circumstances existing at the time and give effect to the appearance of things from the written evi-

dence, since there is no living witness who can give positive testimony as to what was the intention of the parties. The point details the facts as disclosed by the written instruments and the dates on which they were recorded, and draws certain presumptions therefrom, and contends that it was proper to submit to the jury the issue of whether or not these written instruments constitute, in law, a single instrument, or single transaction.

### No. 9.

The ninth point contends that even if the appellants were not parties to the original suits brought by Hapgood and Edwards, nevertheless, appellants failed to show title in themselves.

### No. 10.

The tenth point asserts that for more than a half century there has been of record, in Clay County, an instrument and instruments which have the effect of and do constitute a deed and conveyance of the minerals in controversy, and there being a grant in existence no presumption of an ancient grant is necessary.

### No. 11.

(a) There was no severance of the minerals. The two instruments relied upon by appellees served to convey the entire estate; they have been on record for many years; those claiming under them have been in open and adverse possession, claiming the fee title, and it does not now lie in the mouths of appellants to say that they had no knowledge that Worsham was claiming under a grant executed by Ferguson and Jordan through an attorney in fact; therefore appellants are estopped to so say and such estoppel is one by deed; and, therefore, an intention to actually mislead or deceive is not necessary to create the estoppel here presented.

(b) Under the facts of record in this case, the title to the lands and all minerals thereunder were vested in Jordan and Ferguson and they conveyed same by the instruments relied upon by appellees, and if there were any outstanding title such was merely an equitable right or title in the beneficiaries or partnership, and these rights were foreclosed in the judgments rendered in the two suits brought by appellees in 1939; and it further appears that, if any outstanding title existed, from and after the deed and release were executed and delivered to Worsham, such was merely an equitable right or claim, and if this right or claim was acquired by appellants under

the receiver's sale, it has been lost by abandonment.

(c) The delay in bringing suit for more than 50 years after the transactions were had on which reliance is made, and after all parties to same had died, constitutes laches and such bars a recovery by appellants.

### No. 12.

The basis of appellants' claim is that Randall was without authority to act in executing the "release"; but nowhere is it contended that the trustees had no power to convey, nor that the copartnership could not have authorized a conveyance. And Randall's authority was recited in the instrument, which he acknowledged in the capacity of attorney in fact for the trustees, and the lapse of time in repudiating the act of Randall, as well as the acts of the copartnership and its representatives and trustees which are consistent with Randall's authority, would be evidence of a ratification, even though it may appear that Randall had insufficient authority, and the defense of ratification, if not complete as a matter of law, there was raised an issue of fact for the jury and its finding thereon is conclusive.

### No. 13.

(a) It will be presumed that the authority of Randall existed from the recitals in the "release", it being an ancient instrument, and such presumption, although it is one of fact, entitles the defendants to a judgment, in the absence of any testimony raising an issue of the want of Randall's authority; but if there is evidence raising such issue it was proper for the trial court to submit same to the jury and the issue submitted is not on the weight of the evidence and did not call for a legal conclusion.

(b) The instruction, given in connection with issue No. 1, was not on the weight of the evidence and the burden of proof was put upon appellees.

### No. 14.

Since the presumption exists that Randall was authorized to execute the "release", which is an ancient instrument raising such presumption, if there is any evidence tending to rebut the presumption, it was proper for the trial court to submit the issue that was submitted, and, if the trial court had given the issues requested by the appellants such would have been mere evidentiary issues and would have "unduly singled out and accentuated" the

evidence on which appellants rely to rebut the presumption.

Irrespective of any errors, if any, committed by the trial court, as we view this record, the disposition of the two cases depends upon Article 5519, Vernon's Ann. Civil Statutes, as amended by the Acts of the 40th Legislature in 1927.

■ A comparison of such Statute, as enacted in 1919, by the 36th Legislature, at its Second Called Session, page 139, and the Statute in its present amended form, discloses that it was the evident intention of the Legislature to put at rest the title to lands in Texas, where the claimant can come under the provisions of the amended Statute.

This Statute is as follows: "Art. 5519. Action barred in twenty-five years. No person who has a right of action for the recovery of real estate shall be permitted to maintain an action therefor against any person having peaceable and adverse possession of such real estate for a period of twenty-five years prior to the filing of such action, under claim of right, in good faith, under a deed or deeds, or any instrument or instruments, purporting to convey the same, which deed or deeds or instrument or instruments purporting to convey the same have been recorded in the deed records of the county in which the real estate or a part thereof is situated; and one so holding and claiming such real estate under such claim of title and possession shall be held to have a good marketable title thereto, and on proof of the above facts shall be held to have established title by limitation to such real estate regardless of coverture, minority, insanity or other disability in the adverse claimant, or any person under whom such adverse claimant claims, existing at the time of the accrual of the cause of action, or at any time thereafter. Such peaceable and adverse possession need not be continued in the same person, but when held by different persons successively there must be a privity of estate between them. The adverse possession of any part of such real estate shall extend to and be held to include all of the property described in such deed or instrument conveying or purporting to convey, under which entry was made upon such land or any part thereof, and by instrument purporting to convey shall be meant any instrument in the form of a deed or which contains language showing an intention to convey even though such instrument, for want of proper execution or for other cause is void on its face or in fact."

The statute expressly provides that the adverse possession of any part of the real estate shall extend to and be held to include all of the property described in such deed or instrument conveying or purporting to convey and under which entry was made upon the land or upon any part thereof, and that by instrument purporting to convey shall be meant any instrument in the form of a deed or which contains language showing an intention to convey, even though such instrument, for want of proper execution or for other cause is void on its face or in fact.

■ It cannot be doubted that the deed executed by the trustees and delivered to Worsham intended to convey and did convey the surface rights, and that it intended to reserve the mineral rights in the lands conveyed, but it is equally certain that the release executed by Randall, who purported to have authority to do so, was intended to release all mineral rights in and under the lands and to thus convey the mineral rights to Worsham.

Even though it could be shown that this instrument, executed and delivered by Randall, the agent, was not properly executed, and even though it be made to appear that it is void on its face, or void in fact, it is certain that Worsham took possession of the property under it and that he and those who claim under him have had possession and have claimed the right to the surface and the minerals for more than twenty-five years before the suits were brought by appellants, and the instruments, under which appellees claim, have been on record in Clay County for almost 60 years before appellants brought their suits, and they must be held to have had constructive notice of the claim of right that Worsham and those holding under him are making and have made for these many years.

■ We are also of opinion that appellees should recover under the provisions of Article 5519a, Vernon's Ann. Civil Statutes.

That Statute reads as follows:

"Art. 5519a. Title to land by limitation. In all suits involving the title to land not claimed by the State, if it be shown that those holding the apparent record title thereto have not exercised dominion over such land or have not paid taxes thereon, one or more years during the period of

twenty-five years next preceding the filing of such suit and during such period the opposing parties and those whose estate they own are shown to have openly exercised dominion over and asserted claim to same and have paid taxes thereon annually before becoming delinquent for as many as twenty-five years during such period, such facts shall constitute prima facie proof that the title thereto had passed to such persons so exercising dominion over, claiming and paying taxes thereon.

"Sec. 2. This Act shall in no way affect any Statute of Limitation or the right to prove title by circumstantial evidence under the present Rule of Decision in the Courts of this State nor to suits between trustees and their beneficiaries nor to suits now pending."

If it be conceded that appellants hold the apparent record title to the minerals in and under the lands, they have not made any attempt to exercise dominion over same, neither have they paid any taxes thereon for one or more years during the period of twenty-five years next preceding the filing of their suits; but the record before us discloses that Worsham and those claiming under him have openly exercised dominion over the lands and the minerals and have asserted their claim to same under the conveyance made by Randall, and they have paid all taxes assessed against same, without permitting same to become delinquent for more than twenty-five years before appellants brought their suits, and these facts constitute prima facie proof that the title thereto has passed to Worsham and those who hold under him.

For the reasons stated, the judgments in both cases are affirmed, and we pretermit discussing and passing upon any other issues or points raised.

McDONALD, C. J., dissenting.

McDONALD, Chief Justice (dissenting).
I find myself unable to concur in the opinion of the majority of the Court.

If, as contended by appellees, there was never in fact a severance of the minerals from the surface, then there is no need to resort to the statutes of limitations, because, if such be conceded, then Worsham acquired the title to both the surface and the minerals under the instruments referred to in the majority opinion.

But if appellees must resort to the statutes of limitation to maintain their defense, it must be upon the theory that there was a severance of the minerals. In my judgment, the undisputed evidence shows that the deed from the trustees accomplished a severance of the minerals from the surface.

It is my view that the appellees have shown no adverse possession of the minerals. I find nothing in either Art. 5519 or Art. 5519a which will enable a party to establish limitation title without showing adverse possession. Possession of the surface is not enough. The decision in Rio Bravo Oil Co. v. McEntire, 128 Tex. 124, 95 S.W. 2d 381, 96 S.W.2d 1110, appears to me to be controlling here. For the rule in other jurisdictions, see the cases cited in annotations in 13 A.L.R. 372 and 67 A.L.R. 1440. The rule is thus stated by the editor of the former annotation:

"The decisions are unanimous in holding that where the title to the mineral right has been severed from the title to the surface, possession of the surface by its owner is not adverse to the owner of the mineral below it. The mineral owner does not lose his possession by any length of nonuser, and the surface owner cannot acquire title to the minerals by adverse possession based on his exclusive and continued occupancy of the surface alone."

Reference is also made to the discussion in 31 Tex.Jur. 564, and cases there cited.

While the appeal before us presents other questions of importance, I doubt if it would be of any benefit to discuss them here, in view of the disposition which has been made of the appeal, further than to say that I am of opinion that there is reversible error in the judgment of the trial court.