(101 N. W. 905.)

---

### W. IRA BROWN v. J. C. SMITH AND RUSSELL & COMPANY.

Opinion filed December 14, 1904.

**Second Mortgage May Redeem Under Section 5894, Rev. Codes 1899.**

1. A second mortgagee has the right to redeem, under section 5894, Rev. Codes 1899, from a chattel mortgage sale by advertisement.

**Notice of Intention to Redeem — Time of Service.**

2. The notice of intention to redeem required by section 5894, Rev. Codes 1899, is served in time if served as soon after the sale as by reasonably prompt and vigorous exertion the service can be effected.

**To Effect Redemption From Chattel Mortgage Sale, Tender of Amount Required Must Be Made Under Section 3814 Rev. Codes.**

3. In order to show a complete redemption from a chattel mortgage sale under section 5894, it is not sufficient to prove a tender of the

amount required to redeem, and a refusal to accept; but it must also be proved that the tender was kept good by a deposit of the amount tendered, in accordance with the provisions of section 3814, Rev. Codes.

Appeal from District Court, Benson county; *Cowan, J.*

Action by W. I. Brown against J. C. Smith and Russell & Co. Judgment for plaintiff. Defendants appeal.

Reversed.

*W. H. Thomas,* for appellants.

The holder of a second chattel mortgage is not an assignee under the provisions of section 5849, and could only redeem the mortgage debt, and this he could not do after a foreclosure sale. Martin v. Fridley, 23 Minn. 13; Collins v. Riggs, 14 Wall. 491, 20 L. Ed. 723; Gage v. Brewster, 31 N. Y. 218.

Notice of intent to redeem was not given in time. Mortgagor or his assignee can only redeem at the time of sale, not after.

Plaintiff's alleged tender was not kept good. It should have been kept good to the time of trial. This was as essential as the tender itself. Burlock v. Cross, 26 Pac. 142; Aulger v. Clay, 109 Ill. 487; Lantry v. French, 33 Neb. 524, 50 N. W. 679; Sanders v. Bryer, 25 N. E. 86; Sanders v. Peck, 131 Ill. 407; 25 N. E. 508.

*McClory, Barnett & Adamson,* for respondent.

Redemption was in time. He had a reasonable time after the sale, and thirty-three minutes after the sale was a reasonable time.

It is stipulated that the tender was made and it is a presumption that it continues to exist. Rev. Codes, section 5713c, No. 32.

A subsequent mortgagee is an assignee of the mortgage for the purpose of redemption, the same as he is for the purpose of reclaiming the surplus. Nichols v. Tingstand, 10 N. D. 172, 86 N. W. 694; Nopson v. Horton, 20 Minn. 268; Fowler v. Johnson, 3 N. W. 986; Brown v. Crookston Agricultural Ass'n, 26 N. W. 907; Aultman & Co. v. Siglinger, 50 N. W. 911.

ENGERUD, J. This is an action to recover the possession of a threshing engine, of which the plaintiff claims to be the owner, and which it is alleged the defendants wrongfully withhold. The defendants deny plaintiff's ownership and right to possession, and allege title in the defendant Russell & Co. The issues were submitted to a jury for trial, and the only evidence offered was certain stipulated facts. Plaintiff's motion for a directed verdict in his

favor was granted, and judgment was entered accordingly. The defendants have appealed from the judgment, and assign errors on a statement of the case.

It appears from the pleadings and stipulation of facts that one Michael Giedd was formerly the owner of the property in dispute. The defendant Russell & Co., a corporation, held a first mortgage on the engine for a debt of $1,000 and interest, which mortgage contained the usual power of sale in case of default in the payment of the debt when due. The plaintiff held a second mortgage on the same property for a debt of $400 and interest. Both mortgages were given by Michael Giedd, and both were duly filed. On April 28, 1901, the defendant J. C. Smith, acting as agent for Russell & Co., took possession of the engine for the purpose of foreclosing Russell & Co.'s mortgage thereon under the power of sale. The sale was made May 11, 1901, at 2 o'clock p. m., and the engine was bid in for and struck off to Russell & Co., for the sum of $150. J. C. Smith conducted the sale as agent for the mortgagee, and had possession of the engine for that purpose. When the sale was made, he retained possession of the engine as agent for the purchaser. The engine is worth $800. At 2:33 o'clock p. m. on the day of sale, the plaintiff served upon Smith a notice of his intention to redeem from the sale, pursuant to section 5894, Rev. Codes 1899. On May 15th the plaintiff inquired of Smith for the amount of costs incurred in the foreclosure, but the latter refused to furnish any information on that subject. Thereupon, on the same day, plaintiff tendered to Smith, to effect redemption, the sum of $170; $20 being the estimated costs. The tender was refused. This action followed.

The sole basis for the right of redemption asserted by plaintiff is section 5894, Rev. Codes 1899, which reads as follows: "Any mortgagor of personal property, or his assignee, may redeem the same from a sale upon foreclosure of any mortgage within five days after such sale, exclusive of the day of sale, by paying or tendering to the owner of the mortgage at the time of sale, his agent or attorney, or the person making the sale, the amount for which said property was sold with the costs of sale and interest at the rate of seven per cent per annum from the date of sale. The mortgagor or his assignee desiring to redeem such property shall at the time of sale give written notice to the person making the sale of his desire to make such redemption; otherwise he shall be deemed

to have waived his right to do so. In case such notice is served, the person making such sale shall retain the possession of the property sold until the expiration of said five days, and shall be entitled to his reasonable expenses in caring for the same. In case a part only of the property sold is redeemed, the redemptioner shall pay or tender, in addition to the price for which such part was sold, such a proportion of the costs of sale as said price bears to the entire price of all the property sold, and also the reasonable expense of caring for the property redeemed and interest."

The solution of the problem upon which the controversy hinges depends upon the answers to be given to two questions: (1) Is the plaintiff, by virtue of his chattel mortgage, an "assignee" of the mortgagor, within the meaning of the act? (2) Has the plaintiff complied with all the conditions prescribed by the act to effect a redemption? It is manifest that plaintiff's right is dependent upon an affirmative answer to both these questions. A negative answer to either question is fatal to plaintiff's claim.

The act in question is an innovation, and, so far as we can ascertain, is peculiar to this state. It is a very crude piece of legislation, but the main object is very clear. It was plainly designed to prevent the sacrifice of mortgaged personal property for less than its value at a sale under the power. It is a matter of common knowledge that the power of sale in a chattel mortgage has been often made the instrument of much wrong and oppression. It enables the mortgagor to seize the property and sell it on a notice of six days, without the restraints and safeguards of judicial supervision. The advantage which the mortgagee has over other bidders has a tendency to prevent competition in bidding. Where the debt equals or exceeds the value of the property, the mortgagee will, as a rule, outbid other bidders, so as to get the property, or its full value, for himself. The result is that the mortgagee seldom has any competition at the sale, and is at liberty to buy the property for any sum he sees fit, however insignificant the price may be. The facts of this case furnish a good example of the evils which the law was designed to remedy. The first mortgage exceeded the value of the property. The circumstances of the debtor were such that he either could not or would not redeem. The second mortgagee was effectually barred from redeeming before sale, because, in order to do so, he would have to pay the full amount due on the first mortgage, which was at least $200 more than the property was worth. The

mortgagee sought to take advantage of the situation by bidding only $150 for property worth $800. There was no inducement for others to bid, because there was no probability that they could get the property for less than its full value. If the defendant's plan of operation shall succeed, the mortgagee will have obtained property worth $800, and the mortgagor's notes will still be almost wholly unpaid. The law was designed to enable persons interested in the property to protect themselves against such unfair dealing. The purpose of the law was therefore highly beneficent, and, like all remedial legislation, should receive a liberal construction. The law in question is part of the Code of Civil Procedure, and one of the first sections of that Code (section 5147, Rev. Codes 1899) states the rule to be followed in the interpretation of the provisions of that Code in the following language: "The rule of the common law that statutes in derogation thereof are to be strictly construed, has no application to this Code. The Code establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed with a view to effect its objects and to promote justice." Bouvier's Law Dictionary (Rawle's Revision) gives the following definitions: An assignee is "one to whom an assignment has been made;" and an assignment is "a transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein." In Brown v. Association, 34 Minn. 545, 26 N. W. 907, a second mortgagee was held to be entitled to the surplus arising from a foreclosure sale under a statute which required such surplus to be paid to the mortgagor, his legal representatives or assigns. The court said: "The term 'assigns' is of sufficiently broad signification to include the second mortgagee. * * * And 'assigns' has been deemed to comprehend all those who take either immediately or remotely, from or under the assignor, whether by conveyance, devise, descent or act of law." This court reached the same conclusion in Nichols v. Tingstad, 10 N. D. 172, 86 N. W. 694. We have no hesitation in holding that the plaintiff, as second mortgagee, is an "assignee" of the mortgagor, within the meaning of this statute. He is clearly within the class of persons which the statute designed to protect, and the language is sufficiently broad to comprehend him within its terms.

The appellant, however, asserts that the plaintiff has no cause of action because he did not serve the notice of intention to redeem

upon Smith "at the time of the sale." The appellant contends that the words "at the time of the sale" can have no other meaning than during, simultaneous with, or immediately before the sale, and consequently the service of the notice within thirty-three minutes after the sale was ineffectual. It is obvious that the words "at the time of sale" cannot be taken literally. Such an interpretation would lead to the absurd result that the intended redemptioner must serve the notice upon the auctioneer the instant the hammer falls. We are forced by the necessity of the situation to depart from the literal meaning of the words. In which direction shall the departure be made? Shall we say the fall of the hammer terminates the right of redemption, and thus restrict and narrow the scope of the act? Or shall we take a more liberal view of it, and say that the fall of the hammer marks the beginning of the period of time within which the notice must be served? The rule for interpretation laid down by section 5147, above quoted, is decisive. That interpretation must be adopted which will best effect the object of the law and promote justice. It cannot be known until the sale is made whether there has been a sacrifice of the property or not. Ordinarily the right to redeem would not be exercised except to prevent a sacrifice. It is unreasonable to require the person who is entitled to redeem to give notice that it is his intention to redeem before he knows whether he will avail himself of the right. The law itself is sufficient notice to bidders that the right to reclaim the property exists, and that the right will probably be exercised if the property does not bring its fair value. If the property does not bring its fair value, it is certainly promotive of justice and in accordance with the object of the law to permit redemption. We are clear that the phrase "at the time of sale," taken in connection with the context and the intent of the law, should be construed to convey the same meaning as the word "forthwith" or "immediately" would convey if used in the same connection. These terms are stronger than the expression "within a reasonable time," and imply prompt, vigorous action, without any delay. So construed, the statute is complied with if the notice is served as soon as by reasonably prompt and vigorous exertion it may be accomplished. Bouvier's Law Dictionary (Rawle's Revision), p. 834. See, also, definition of "immediate" and "immediately" in the same dictionary. We have no hesitation in holding, as a matter of law, that, under the circumstances of this case, the notice

was served in time.  The preparation and service of the notice within thirty-three minutes shows prompt and vigorous exertion.  It follows, therefore, that the plaintiff was entitled to make redemption.

There is no proof in the record that the plaintiff deposited the money tendered for redemption in a' bank of good repute, payable to defendants.  The appellant assigns this defect of proof as a ground for reversal, and we think the point is well taken.  The statute imposes on the redemptioner the obligation to pay the amount required to redeem as a condition precedent to the acquirement of any right to the property sold.  It was incumbent on the plaintiff, therefore, to show that the obligation which the statute imposed on him had been extinguished.  Section 3814, Rev. Codes 1899, provides: "An obligation for the payment of money is extinguished by a due offer of payment, if the amount is immediately deposited in the name of the creditor with some bank of deposit within this state of good repute, and notice thereof is given to the creditor." Section 3818 provides: "An obligation for the delivery of money * * * is not discharged by an offer of performance, nor any of its incidents affected, unless the thing offered, if money, is deposited as provided in section 3814.  * * *" The respondent argues that, inasmuch as the stipulated facts show that a tender was made, it must be presumed that the offer of the money was followed by a proper deposit in the absence of a denial of such deposit by the defendant.  That argument is based on the erroneous assumption that the act of tender, under our statutes, includes the deposit of the money.  The Civil Code has not changed the definition of the term "tender." That term still means what it always meant—an offer of performance.  The Code has substituted the requirement of deposit of the thing tendered, at the risk of the creditor, in place of the common-law requirement that a tender must be kept good by a readiness to pay and payment into court. The Code has also made this further innovation on the common law with respect to the effect of a tender; that a mere tender of the debt is no longer sufficient, as at common law, to extinguish a mortgage or pledge of property, but, to have that effect, the tender must be kept good by a deposit of the thing tendered, subject to the order of the creditor.  Section 3814, quoted above, provides that, in the absence of a deposit, an obligation is not discharged, "nor any of its incidents affected," by a mere offer of performance. In harmony with this rule, we find that section 4693, relating to the redemption of liens, provides that, if the amount secured requires

the delivery of money, an offer to pay must be followed by a deposit of the money, as prescribed in section 3814. It follows therefore, that, for this failure to prove the deposit of the money tendered, there must be a new trial.

The judgment is reversed, and a new trial ordered. All concur. (102 N. W. 171.)